IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. **MICHAEL BAKER**, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 09 C 3574 |
| **ANTHONY RAMOS, Acting Warden, Stateville Correctional Center**, | ) ) ) ) | |
| Respondent. | ) ) | |

### MEMORANDUM OPINION AND ORDER

In 1992, petitioner Michael Baker ("Baker") was charged with first degree murder, attempted first degree murder, and aggravated battery in the Circuit Court of Cook County. The charges arose out of an incident in which Baker was alleged to have stabbed his wife, Donna Strejc ("Strejc"), who was six months pregnant at the time. The stabbing seriously injured Strejc and caused her to give birth prematurely. The infant was born alive but passed away shortly afterward. On April 28, 1994, Baker was found guilty on the murder and attempted murder charges. He was sentenced to forty years in prison for the murder conviction, and another thirty years, to be served consecutively, for the attempted murder conviction.

Baker has filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. As explained more fully below, the petition

is time-barred and is therefore dismissed.[1]

**Procedural History**

In order to determine whether Baker's petition is untimely, it is necessary to recount the case's rather lengthy and convoluted history. Baker began by filing a direct appeal of his conviction on July 27, 1994. The Illinois Appellate Court affirmed the conviction on September 12, 1996. *People v. Baker*, 708 N.E.2d 849 (Ill. App. Ct. 1996). Baker subsequently filed a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court, which was denied on January 29, 1997. *People v. Baker*, 677 N.E.2d 967 (Ill. 1997).

While his direct appeal was pending before the appellate court, however, Baker filed a post-conviction petition in the circuit court. On February 22, 1996, the petition was denied. *See* Certified Report of Disposition, Petr.'s Ex. T (Doc. 6 at 71). On March 14, 1996, Baker appealed the denial of his petition, but the appellate court affirmed the circuit court on August 1, 1997. Baker did not file a PLA following the denial of his post-conviction petition. Instead, on April 23, 1997, while his post-conviction petition was still pending before the Illinois Appellate Court, Baker filed a habeas petition in this Court. *Baker v.*

---

[1] Frank Shaw was the warden of Stateville Correctional Center at the time that Baker's petition was originally filed. Anthony Ramos is currently Stateville's acting warden. Pursuant to Fed. R. Civ. P. 25(d)(1), Ramos automatically replaces Shaw as the proper respondent in this action.

*DeTella*, No. 97-2931 (N.D. Ill. filed Apr. 23, 1997). I dismissed Baker's petition for failure to exhaust state court remedies, and the case was terminated. *See* Minute Order, 7/10/97 (Doc. 8).

Baker then filed several additional motions and petitions in Illinois state court. Specifically, on January 22, 1998, he moved the circuit court for leave to file a petition of mandamus. On January 28, 1998, the circuit court denied the motion. On November 9, 1998, Baker filed a successive post-conviction petition in the circuit court. State's Ex. A (Doc. 17-1) at 10. The court dismissed the petition on November 23, 1998. *Id.* at 11. Still later, on October 25, 2001, Baker filed a motion to subject certain of the evidence in his case to DNA testing. *See* State's Ex. B (Doc. 17-2) *People v. Baker*, No. 92 CR 29268, slip op. at 2 (Ill. App. Ct. Oct. 29, 2008) ("Oct. 29, 2008 Order"). The motion was denied on August 19, 2004. *Id.* Baker appealed and the appellate court affirmed the circuit court's decision on January 25, 2006. He then filed a PLA to the Illinois Supreme Court, which was denied on May 24, 2006. *See People v. Baker*, 852 N.E.2d 241 (Ill. 2006).

On September 12, 2006, Baker filed a motion in the circuit court for relief from judgment. *See* Oct. 29, 2008 Order at 2. On May 9, 2007, the trial court dismissed the petition, ruling that it was frivolous and imposing sanctions on Baker. *Id.* at 3. The trial court's ruling was affirmed by the state appellate court on October 29, 2008. *See* Oct. 29, 2008 Order. Once more, Baker filed

a PLA. The Illinois Supreme Court denied the petition on January 28, 2009. *See People v. Baker*, 982 N.E.2d 1086 (Ill. 2009). Finally, Baker filed the instant action on June 12, 2009. *Baker v. Shaw et al.*, No. 09-3574 (N.D. Ill. filed June 12, 2009).

**Discussion**

**A. The Untimeliness of Baker's Petition**

Baker's petition was filed afer the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. As a result, his petition is subject to AEDPA's statute of limitations. AEDPA provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." *Balsewicz v. Kingston*, 425 F.3d 1029, 1031 (7th Cir. 2005) (quotation marks omitted). As the Seventh Circuit has explained:

> This one-year period runs from the latest of the following: (1) the date the judgment becomes final or the expiration of time to seek review; (2) the date that the impediment to filing created by state action in violation of the Constitution is removed; (3) the date that the constitutional right asserted was recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim could have been discovered by due diligence.

*Id.* at 1031-32 (citing 28 U.S.C. § 2244(d)(1)). However, the statute also provides that "[t]his one-year time limit will be tolled . . . during such time that the petitioner has state post-conviction or other collateral review with respect to the

-4-

pertinent judgment pending in state court." *Id*. (citing 28 U.S.C. § 2244(d)(2)).

Baker's petition is subject to the first of the above-mentioned starting-points.[2] Under that provision, the one-year limitations period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). As noted above, the Illinois Supreme Court denied Baker's PLA on January 29, 1997. At that point, Baker had 90 days within which to file a petition for certiorari to the Supreme Court. *See, e.g.*, *Lo v. Endicott*, 506 F.3d 572, 574 (7th Cir. 2007). Thus, the time for seeking direct review of his conviction expired on April 30, 1997.

Normally, this would have marked the limitation period's

---

[2] While certain of Baker's allegations might seem to suggest a different starting-point, closer inspection shows this to be untrue. Thus, for example, Baker claims in various places that the State's fraudulent activity prevented him from obtaining certain evidence. At first blush, this might appear to implicate starting-point (2). However, Baker's allegations on this point are completely unsubstantiated. Similarly, Baker alleges at various points that his petition is based on new evidence. This might seem to implicate starting-point(4). Any such claims, however, turn out to be frivolous. For example, Baker argues that the evidence in question is "new" in the sense that he "was not aware of [it] until long after [his] conviction." Petr.'s Resp. Br. at 21. Similarly, he argues that it is not important whether the evidence is "newly discovered," but only that it is "newly presented" in the sense that it was not presented at his original trial. *Id.* at 21-24. As explained more fully below, all of the Baker's purportedly "new" evidence is more than ten years old and could have been discovered much earlier if he had exercised due diligence. Thus, Baker's petition is subject to the first of the starting-points singled out above.

starting point. Matters are somewhat complicated, however, by the fact that Baker filed a post-conviction petition in the trial court while his direct appeal was still pending, which had the effect of tolling the limitations period. *See Balsewicz*, 435 F.3d at 1032. The appellate court denied Baker's post-conviction petition on August 1, 1997. Under Illinois Supreme Court Rule 315(b), if Baker had wished to appeal the appellate court's decision to the Illinois Supreme Court, he would have been required to file a PLA within 21 days after the appellate court's opinion was issued. *See, e.g., Wauconda Fire Protection Dist. v. Stonewall Orchards, LLP*, 828 N.E.2d 216, 231 n.4 (Ill. 2005). Moreover, appellants who seek an extension and file the appropriate motion are granted an additional two weeks within which to file a PLA. There appears to be some uncertainty as to whether the limitations period should be tolled for some or all of the 35-day period during which a petitioner could have filed a PLA but did not do so.[3] The precise date does

---

[3] *Compare Owens v. Boyd*, 235 F.3d 356, 357 (7th Cir. 2000) (conclusion of direct review of petitioner's conviction occurred thirty-five days after the state appellate court affirmed his conviction and sentence), *with U.S. ex rel. Aponte v. Sternes*, No. 03 C 8926, 2004 WL 2533791, at *2 (N.D. Ill. Sept. 28, 2004) (one-year period set out by § 2244(d)(1) commenced twenty-one days after the Illinois Appellate Court dismissed petition for rehearing), and *Golden v. Oliver*, 264 F. Supp. 2d 701, 702 (N.D. Ill. 2003) ("As Mr. Golden did not file a petition for leave to appeal within that twenty-one day window, he had a properly filed application for post-conviction review pending only through December 20, 2000, the date the appellate court denied his motion for rehearing."); *Tate v. Pierson*, 177 F. Supp. 2d 792, 798 n.10 (N.D. Ill. 2001) ("Although Tate had a further 21 days to seek leave to appeal to the Illinois Supreme Court, he filed no such

not matter, however, for even granting Baker the maximum possible number of additional days (i.e., 35), his petition must ultimately be found untimely. Hence, assuming that the limitations period was tolled for the entire period during which Baker could have filed the PLA, the clock would have begun to run on September 5, 1997. Baker's next filing, however, was not until January 22, 1998, at which time he sought leave to file a petition of mandamus. Assuming without deciding that Baker's filing of a petition of mandamus tolled the limitations period for purposes of § 2254,[4] 139 of the 365 days allowed under AEDPA would have passed.[5]

Baker's motion for leave to file a petition of mandamus was denied on January 28, 1998. Illinois Supreme Court Rule 606(b) provides that "a defendant must file a notice of appeal within 30

---

petition and therefore his first post-conviction petition had no further tolling effect because it was not pending during that 21-day period.").

[4] There is very little case authority addressing this question. *See, e.g.*, *U.S. ex rel. Andrews v. McAdory*, No. 03 C 7035, 2004 WL 557387 (N.D. Ill. Mar. 22, 2004). It is unnecessary to decide the issue, however, because regardless of whether the petition for mandamus tolled the limitations period in Baker's case, his habeas petition is untimely.

[5] The filing of the motion would not have restarted the limitations period, but would instead have served at most only to stop the clock temporarily. *See* 28 U.S.C. § 2244(d)(2) (providing that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection"); *see also De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009) ("[W]hat [§ 2244(d)(2)] does is exclude particular time from the year, not restart that year.").

-7-

days after entry of judgment or, if a postjudgment motion is timely filed, within 30 days of the order disposing of that motion." *See, e.g., People v. Lindmark*, 887 N.E.2d 606, 618 (Ill. App. Ct. 2008). Thus, at the latest, the limitations period would have begun to run again on February 27, 1998 -- 30 days after the denial of the motion for leave. However, Baker's next filing -- his successive post-conviction petition -- was not until November 9, 1998. Again, even assuming for Baker's benefit that the latter filing tolled the limitations period, the intervening period consisted of 255 days. When added to the 139 days from the previous untolled period (between September 5, 1997 and January 22, 1998), the sum is 408 days. At this point, § 2241(d)'s limitations period had expired.

Nor does the clock stop on this date. Baker's successive petition was dismissed on November 23, 1998. After that time, he had thirty days within which to appeal, which would have tolled the period until December 23, 1998. His next filing -- his motion to allow DNA testing -- was not until October 25, 2001. The intervening period therefore consisted of almost three years. Still further periods of untolled time could be added by continuing to trace the case's procedural history. It is unnecessary to do so, however, for even indulging every assumption in Baker's favor, there can be no doubt that his petition was filed well after the one-year limit.

Indeed, Baker himself makes no attempt to contest any of the

foregoing dates or calculations. Instead, he offers several arguments in an attempt to circumvent the limitations period. He first claims that his June 12, 2009 petition is timely because it "relates back" to the earlier petition he filed in this Court on April 23, 1997. This argument is without merit. As noted above, I dismissed the 1997 petition on July 10, 1997. In doing so, I explained in no uncertain terms that if Baker wished to file a habeas petition under § 2254, he would need to file an entirely separate and distinct action. Baker never did so. Thus, given that the 1997 petition had been dismissed, there was simply no petition for the 2009 petition to relate back *to*. *See, e.g.*, *Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002) (relation-back doctrine did not apply because original habeas petition had been dismissed); *see also Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008) ("[F]or [petitioner] to amend his first petition, said petition needed to have been pending when the proposed amendments were offered. It was not. [Petitioner's] first petition was dismissed in February 2004, so there was nothing to amend when he filed his second petition in January 2007.").

Next, Baker contends that his petition should be considered timely under the equitable tolling doctrine. I disagree. "Before the principles of equitable tolling apply, a petitioner must demonstrate, first, that extraordinary circumstances outside of his control and through no fault of his own prevented him from timely

filing his petition. Second, he must also show that he has diligently pursued his claim, despite the obstacle." *Williams v. Buss*, 538 F.3d 683, 685 (7th Cir. 2008) (citations omitted). As the Seventh Circuit has emphasized, "[e]quitable tolling is rarely granted." *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). Indeed, the Seventh Circuit has "yet to identify a petitioner whose circumstances warrant it," *id.*, and has expressed doubt about whether even to recognize the doctrine's existence, *see, e.g.*, *Buss*, 538 F.3d at 685 (noting that "the very availability of equitable tolling for habeas corpus petitioners is dubious in this circuit").

Even assuming that the doctrine is available, Baker falls far short of meeting the standard necessary for equitable tolling. Although a long list of claims and complaints can be found scattered throughout his many briefs, Baker bases his petition on certain evidence that was not presented at his trial. In particular, he cites the following:

> (1) Chicago Crime Laboratory Report (2) Two(2) Affidavits from a Alibi Witness. (3) Office of the County Clerk, David Orr, Cook County Clerk and Timothy J. Dever, Director Vital Records Division, Certification That Record Was Not Found Record Requested Was : Death Certificate, and Complaint For Preliminary Examination (not signed by a victim who would be Ms. Dona [sic] Strejc), (5) [sic] Grand Jury True Bill of Indictment (showing Det. Wright testifying before grand jury), and also recent received reports establishing that petitioner was denied Confrontation, in which, he learned of the names through an FOIA File.

Petr.'s Resp. Br. at 21.

All of this information has been available for at least a decade: the Crime Laboratory Report is dated April 14, 1993; the affidavits of his supposed "alibi witness" are dated from 1998 and 1999; *see* Petr.'s Resp. Br., Exs. 1, 18 (Doc. 25); the Grand Jury indictment has obviously been extant since the inception of Baker's criminal case; and the document showing that no death certificate had been found for Strejc's child is dated May 15, 2006. *See* Ex. 26 (Doc. 25). At various points in his briefs, Baker claims that the "new evidence" was suppressed and that he was therefore prevented from discovering it sooner. However, he cites no evidence whatsoever to substantiate these accusations. Simply put, Baker has failed to identify any extraordinary obstacle that prevented him from learning this information sooner; he has also failed, *a fortiori*, to show that he diligently pursued his claims.

Taking yet another tack, Baker argues that the untimeliness of his petition should be excused because he asserts a claim of actual innocence. Again, this argument is without merit. For one thing, Baker is mistaken to the extent that he conceives of "actual innocence" as an independent "claim" that can be asserted in a habeas petition. *See, e.g.*, *Schlup v. Delo*, 513 U.S. 298, 315 (1995) (stating that a "claim of innocence is . . . not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits"); *Bivens v. Hulick*, No. 00-CV-7327,

2008 WL 5427748, at *4 (N.D. Ill. Dec. 29, 2008) ("Actual innocence . . . is not itself an independent constitutional claim capable of supporting a claim for habeas relief."). Instead, "actual innocence . . . serves only to lift the procedural bar caused by Appellant's failure timely to file his . . . motion." *United States v. Montano*, 398 F.3d 1276, 1284 (11th Cir. 2005). The Seventh Circuit has clearly held that actual innocence cannot be used to cure an untimely petition: "'Actual innocence' permits a second petition under § 2244(b)(2)(B) -- it clears away a claim that the prisoner defaulted in state court or by omission from the first federal petition -- but does not extend the time to seek collateral relief. Section 2244(d) sets the timing rules for all petitions." *Escamilla v. Jungwirth*, 426 F.3d 868, 871-72 (7th Cir. 2005).

Furthermore, none of the evidence cited by Baker casts any doubt on his conviction. For example, the Criminal Laboratory Report states merely that preliminary tests of the blood from the knife used to stab Strejc yielded inconclusive results. *See* Petr.'s Ex. 22 (Doc. 25). Baker's reliance on the absence of any death certificate for the Strejc infant is similarly misplaced. Apparently, Baker regards the certificate's absence as evidence that the child did not die, or that the child never existed in the first place. Given all of the evidence attesting to the child's existence, however, this suggestion is simply implausible. Baker

also makes much of the fact that on certain records, the Strejc infant's race is listed as "white." He claims that since he is a black male, he could not possibly have been the child's father. However, Baker does not explain precisely why this should be considered important. Even if it could be shown that Baker was not the child's father, that would not lessen his responsibility for the infant's death. And insofar as he offers the baby's racial classification as evidence that the baby never actually existed, Baker's argument, once again, is completely implausible.

The same is true with respect to the Grand Jury indictment and the information about witnesses that he was supposedly prevented from confronting. Again, the precise nature of Baker's argument on this point is not entirely clear, but he appears to claim that the testimony of these individuals would somehow have been favorable to him, but that the State prevented him from learning about them. *See, e.g.*, Petr.'s Sur-Reply (Doc. 29) at 48. However, Baker offers no evidence of any wrongdoing on the State's part, nor any reason for believing that the witnesses' testimony would have been exculpatory in any way.

Nor, finally, is Baker helped by the affidavits of his so-called "alibi witness." Both affidavits are attributed to Ida Croff, who is identified in the affidavits as the landlord of the apartment building where Baker and Strejc resided. The affidavits contain essentially the same averments: in both, Croff states that

in 1994, Strejc told her that Baker was not the person who stabbed her. Croff also states that no one came to interview her in connection with the incident, and that if she had been questioned, she would have told authorities about her conversation with Strejc. The affidavit goes on to state "[t]hat it would be against all the laws of this great state and the Constitution of this great state to continue in allowing in [sic] innocent Man to suffer in prison for a crime that I was told he is not responsible in committing. And, I do not understand, if Dona strejc [sic] told me that Mr. Baker did not commit the offense upon her person. Why, did she not state what she told me in Court?" Croff Aff. Ex. 18 (Doc. 25) ¶ 11. Putting aside any question as to the affidavits' authenticity, Croff's statements are not enough to call Baker's conviction into question. Indeed, Baker himself acknowledges as much, stating at one point that his evidence "may raise only a slight meritorious claim of actual innocence of the crime for which petitioner has been convicted." Petr.'s Resp. to Sur-Reply (Doc. 35) at 9. He nonetheless insists that the documents he cites "are good indicators that something went terribly wrong." *Id*. For the reasons explained above, I remain unpersuaded.

In short, Baker is unable to get around the fact that his petition is untimely. Accordingly, his petition is dismissed.

**B. Motion for Appointment of Counsel**

After filing his response brief, Baker filed a motion for

appointment of counsel. It is well-settled that there is no right to counsel in federal habeas proceedings. *See, e.g.*, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Rather, "[a]ppointing counsel for pro se petitioners in habeas corpus cases is a power commended to the discretion of the district court in all but the most extraordinary circumstances." *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997). As courts have explained, "[a]ppointment of counsel is . . . appropriate if the difficulty of the issues relevant to the capabilities of the litigant would make it impossible for him to obtain any sort of justice without the aid of a lawyer and he could not obtain a lawyer on his own." *U.S. ex rel. Lam v. Page*, No. 96 C 6412, 1997 WL 285869, at *1 (N.D. Ill. May 23, 1997).

Since Baker's petition is time-barred, assistance of counsel is unnecessary in this case. Even if his petition were not time-barred, it is unlikely that it would have been necessary to appoint counsel for Baker. In fact, Baker has represented himself ably in these proceedings: he has submitted several lengthy briefs in support of his petition, and he has supplied all of the documentary evidence necessary to assess his claims.[6] Baker's motion for

---

[6] At various places in his briefs, Baker requests that an evidentiary hearing be held regarding certain of his claims. Courts have held that counsel should be appointed to pro se habeas petitioners in cases where an evidentiary hearing is required. *See, e.g.*, *U.S. ex rel. Doll v. Cooper*, No. 96 C 368, 1998 WL 59648, at *8 (N.D. Ill. Feb. 9, 1998) ("A court should appoint counsel in a habeas proceeding if an evidentiary hearing is

appointment of counsel is denied.

## CONCLUSION

For the reasons discussed above, Baker's petition for habeas corpus is dismissed and his motion for appointment of counsel is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 24, 2010

---

required, or if the interests of justice so require."). For the reasons discussed above, however, I conclude that no hearing is necessary in this case. Thus, the fact that Baker requests an evidentiary hearing does not affect my decision to deny Baker's motion for appointment of counsel.